# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| **v.** | **Case No.** |
| **2019 Lexus NX300, VIN: JTJBARBZ5K2180053** | |
| **Defendant.** | |

## COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff, United States of America, by its attorneys, Timothy A. Garrison, United States Attorney for the Western District of Missouri, and Stacey Perkins-Rock, Assistant United States Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1.      This is an action to forfeit property to the United States for violations of 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANT *IN REM*

2.      The 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, was seized from Henry Asomani (Asomani) on October 26, 2018, at his residence in Dumfries, Virginia.   It is presently in the custody of the United States Federal Bureau of Investigation (FBI) in Manassas, Virginia.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under

28 U.S.C. § 1355(a). This Court also has jurisdiction over this particular action under 18 U.S.C. § 981(a)(1)(A).

4.   This Court has *in rem* jurisdiction over the defendant property pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

5.   Venue is proper in this pursuant to 28 U.S.C. §1355(b)(1)(A) because acts or omissions giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

6.   The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because it constitutes property involved in a transaction or an attempted transaction in violation of sections 1956, 1957 and 1960 of Title 18, United States Code, or is property traceable to such property.

7.   The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) because it is property which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" (as defined in Section 1956(c)(7) of Title 18, United States Code) or a conspiracy to commit such offense, with such offenses including violations of 18 U.S.C. § 1343 (wire fraud).

## FACTS

8.   In June 2016, the Kansas City Division of the FBI began a money laundering investigation regarding Asomani, who was alleged to have received monetary proceeds from an online romance fraud.

9.   Based on articles of incorporation produced by the Commonwealth of Virginia State Corporation Commission, Asomani lived in Dumfries, Virginia and owned, operated, or was the registered agent for the following businesses:

2

a. Xtreme Custom LLC, formed on January 27, 2017, with an office listed as 3204 Jasper Hill Court, Dumfries, Virginia;

b. Elite Group Custom LLC, formed on February 28, 2016, with an office listed as 9532 Liberia Avenue, Suite 723, Manassas, Virginia;

c. Crystal Custom LLC, formed on December 30, 2014, with an office listed as 6501 Tower Drive, Apt. 102, Alexandria, Virginia;

d. Ringle Custom Auto LLC, formed on April 26, 2014, with an office listed as 6501 Tower Drive, Apt. 102, Alexandria, Virginia; and

e. Mega Auto Custom LLC, formed on June 19, 2012, with an office listed as 6501 Tower Drive, Apt. 102, Alexandria, Virginia.

10. Asomani opened and had signatory power over the following bank accounts:

a. Mega Auto Custom LLC, Navy Federal Credit Union account numbers XX6597 & XX4908;

b. Mega Auto Custom LLC, Bank of America account numbers XX6359 & XX5105;

c. Crystal Custom LLC, M & T Bank account numbers XX8245 & XX9456;

d. Crystal Custom LLC, PNC account number XX3444;

e. Elite Group Custom LLC, Industrial Bank account numbers XX6699 & XX3433;

f. Henry Asomani, Navy Federal Credit Union account numbers XX4761 & XX0493;

3

g.   Henry Asomani, PNC Bank account numbers XX7019, XX2224, & XX7491;

h.   Henry Asomani, M&T Bank account number XX8237;

i.   Henry Asomani, U.S. Bank account number XX1955; and

j.   Henry Asomani, Pentagon Federal Credit Union account number XX7022.

11.   Unknown co-conspirators targeted individuals through online dating websites with various romance frauds.   The unknown co-conspirators impersonated individuals allegedly involved in businesses overseas.   The unknown co-conspirators convinced victims that funds were needed to help move gold from a foreign country, to pay orphanage expenses, and to defray school and travel expenses.

12.   The unknown co-conspirators told victims they would share the profits when the gold was returned to the United States.   In fact, none of the victims received any profit or received any gold from the co-conspirators.

13.   Under these fraudulent pretenses, the unknown co-conspirators induced victims to send money to various individuals, including Asomani, in violation of 18 U.S.C. §§ 1343 and 1349 (wire fraud conspiracy) and 18 U.S.C. §§ 1343 and 2 (wire fraud).

14.   Asomani moved the victims' money between his accounts, wired victim money to Ghana and spent victim money on, among other things, the defendant 2019 Lexus NX300, VIN: JTJBARBZ5K2180053, in violation of 18 U.S.C. §§ 1956(h) and 1957.

15.   Victim number 1 (V1) resides in the Western District of Missouri. V1 set up a profile on ChristianMingle.com following the death of her husband to brain

4

cancer.   In October 2015, an individual claiming to be "Larry B. White" ("White")
initiated contact with V1.   Following numerous conversations by email and
telephone, "White" convinced V1 to invest in a Ghana gold mine.   "White" promised
a 40% return to V1 for the investment of money.   From November 2015, through
January 2016, under the direction of "White," V1 sent funds to multiple entities by
check and wire from Lee's Summit, Missouri, totaling approximately $3,292,000.
Of that amount, the following transfers were made to accounts controlled by
Asomani:

| Date | Method | Bank | Account Name | Account Number | Amount |
|------|--------|------|--------------|----------------|--------|
| 11/05/2015 | Wire | Navy Federal CU | Mega Auto Custom LLC | 6597 | $70,000 |
| 11/12/2015 | Wire | Navy Federal CU | Mega Auto Custom LLC | 6597 | $70,000 |
| 11/19/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $50,000 |
| 11/19/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $50,000 |
| 11/24/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $70,000 |
| 11/25/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $70,000 |
| 11/25/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $60,000 |
| 12/01/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $50,000 |
| 12/01/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $50,000 |
| 12/03/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $80,000 |
| 12/03/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $80,000 |
| 12/14/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $90,000 |
| 12/14/2015 | Check | Bank of | Mega Auto Custom LLC | 5105 | $90,000 |

5

| | | America | | | |
|---|---|---|---|---|---|
| 12/15/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $90,000 |
| 12/15/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $90,000 |
| 12/16/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $90,000 |
| 12/16/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $90,000 |
| 12/16/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $40,000 |
| 12/21/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $90,000 |
| 12/21/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $90,000 |
| 12/21/2015 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $51,000 |
| 12/21/2015 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $51,000 |
| 01/19/2016 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $138,500 |
| 01/19/2016 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $138,500 |
| 01/22/2016 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $151,000 |
| 01/22/2016 | Check | Bank of America | Mega Auto Custom LLC | 5105 | $151,000 |
| 01/22/2016 | Check | Bank of America | Mega Auto Custom LLC | 6359 | $151,000 |
| **Total** | | | | | **$2,292,000** |

To date, V1 has not received any money or gold profits from "White."

16.     Victim number 2 (V2) lives in Bridgewater, New Jersey.   V2 met "Antonio" through an online dating site chemistry.com.   "Antonio" convinced V2 to send money for gold and gold mine-related expenses such as machine repairs, labor, and shipping.   V2 had a total loss of approximately $250,000.   Of that amount, V2

6

sent $60,000 to Mega Auto Custom LLC, Bank of America account XX6539 between September 15, 2015, and December 2, 2015.

17.      Victim number 3 (V3) is a resident of Anchorage, Alaska.   V3 met "Dickey James" ("James") on Match.com.   "James" convinced V3 to send money for gold-related expenses such as customs, taxes and shipping.   V3 had a total loss of approximately $137,369.   Of that amount, V3 sent approximately $72,828 by two wire transfers to Pentagon Federal Credit Union account XX7022, in the name of Henry Asomani, on October 24, 2015, and October 31, 2015.   "James" promised to send V3 gold in exchange for the gold-related expense payments.   To date, V3 has not received any gold from "James."

18.      Victim number 4 (V4) resides in Norman, Oklahoma.   V4 met "Steve Stankovich" ("Stankovich") on Match.com.   "Stankovich" convinced V4 to send money for personal assistance and oil investment issues such as customs. Between December 31, 2015, and July 10, 2017, V4 had a total loss of approximately $80,000.   Of that amount, V4 sent a total of $66,126 to accounts in the name of Henry Asomani, Mega Auto Custom, Crystal Custom LLC, and Elite Group Custom.   On January 6, 2016, V4 sent $10,000 via check to Henry Asomani's Navy Federal Credit Union account XX0493.   On January 29, 2016, V4 sent $25,045 via check to Crystal Custom LLC, PNC Bank account XX3444.   On February 5, 2016, V4 sent $7,372 to Henry Asomani's PNC Bank account XX7019. "Stankovich" promised to pay V4 back and send V4 the profits from the oil investment.   To date, V4 has not received any money back or oil profits from "Stankovich."

19.      Victim number 5 (V5) resides in Lakeland, Florida.   V5 met "Greg Van Hoof" ("Van Hoof") on Match.com.   "Van Hoof" convinced V5 to send money to

assist in orphanage repairs and shipping expenses for gold.   V5 had a total loss of approximately $19,500.   Of that amount, V5 deposited $11,500 via three checks into Mega Auto Custom LLC, Bank of America account XX5105, on January 7, 19, and 21, 2016.

20.     Victim number 6 (V6) resides in Melbourne, Florida.   V6 met "Greg Van Hoof" on Match.com.   "Van Hoof" convinced V6 to send money to assist in orphanage repairs and shipping expenses for gold.   V6 had a total loss of approximately $35,000.   Of that amount, V6 deposited $2,500 cash into Mega Auto Custom LLC, Bank of America account XX5105, on January 7, 2016.   "Van Hoof" promised to ship gold to V6's house.   To date, V6 has not received any gold from "Van Hoof."

21.     Victim number 7 (V7) resides in Fairbanks, Alaska.   V7 met "David Dickey" ("Dickey") on Eharmony.com or Match.com.   "Dickey" convinced V7 to send funds to form a partnership in a gold mining business.   V7 had a total loss of $86,200.   On February 10, 2016, V7 wired $50,000 to Henry Asomani's Navy Federal credit Union account XX4761.   On February 19, 2016, V7 wired $36,200 to Navy Federal Credit Union account XX4761.   To date, the partnership between "Dickey" and V7 was never formed and V7 has not received any money back from "Dickey."

22.     Victim number 8 (V8) resides in North Fort Myers, Florida.   V8 met "James Van Cole," aka "James Van Hoff" ("Van Cole") on Eharmony.com.   "Van Cole" convinced V8 to send funds for vehicle repairs and funeral expenses.   V8 had a total loss of approximately $225,000.   Of that amount, V8 wired $40,000 to the Mega Auto Custom, LLC, Navy Federal Credit Union account XX6597, on February

8

10, 2016. "Van Cole" promised to pay V8 back for the expenses. To date, V8 has not received any money from "Van Cole."

23. Victim number 9 (V9) resides in Hurst, Texas. V9 met "Greg Van Hoof" on Eharmony.com. "Van Hoof" convinced V9 to send funds for orphanage repair and gold related expenses. V9 had a total loss of approximately $57,500. Of that amount, V9 sent $52,500 by three wire transfers to the Crystal Custom LLC, M & T Bank account XX8245, on May 4, 13 and 18, 2016, respectively. "Van Hoof" promised to pay V9 back with money from the gold. To date, V9 has not received any money from "Van Hoof."

24. Victim number 10 (V10) resides in Ottawa, Kansas. V10 met "James Macovedder" ("Macovedder") on an online dating website. "Macovedder" convinced V10 to send funds for orphanage repairs and gold related expenses. On July 15, 2016, V10 wired $10,000 to Crystal Custom LLC, M&T Bank account number XX8245. "Macovedder" promised V10 a share of the gold. To date, V10 has not received any gold from "Macovedder."

25. Victim number 11 (V11) resides in Newhall, Iowa. V11 met "Danny Heinrich" ("Heinrich") on Match.com. "Heinrich" convinced V11 to send funds for school expenses, travel expenses and customs fees for a bag with contents worth millions of dollars. V11 had a total loss of approximately $60,000. Of that amount, V11 sent three wire transfers totaling $55,000 to US Bank account XX1955, in the name of Henry Asomani. The three wire transfers occurred on November 8, 9 and 15, 2016, respectively. "Heinrich" promised to pay V11 back with the contents of the bag. To date, V11 has not received any money from "Heinrich" or a bag with contents worth millions of dollars.

9

26.     Victim number 12 (V12) resides in Leawood, Kansas.   V12 met "George Bill Parker" ("Parker") on Facebook.   V12 was convinced to send funds for gold related expenses such as legal fees, customs, storage, farm related expenses and ransom.   "Parker" promised V12 he would pay V12 back with money or gold. V12 had a total loss of approximately $800,000.   Of that amount, V12 sent approximately $220,700 to accounts in the name of Mega Auto Custom LLC, Crystal Custom LLC, and Henry Asomani.   Between March 2017 and October 2017, V12 sent $110,700 via PayPal to Mega Auto Custom LLC and Crystal Custom LLC accounts.   On July 21, 2017, V12 wired $50,000 to Pentagon Federal Credit Union account XX7022, in the name of Henry Asomani.   On August 18, 2017, V12 wired $60,000 to US Bank account XX1955, in the name of Henry Asomani.   To date, V12 has received no money or gold from "Parker."

27.     Victim number 13 (V13) resides in Kansas City, Missouri.   V13 met "Bradley Fischer" ("Fischer") on ChristianMingle.com.   "Fischer" convinced V13 to send funds for school expenses, travel expenses and to start a new life in Kansas City.   On July 19, 2017, V13 wired $24,000 to US Bank account XX1955, in the name of Henry Asomani.   "Fischer" promised to pay V13 back when he got to Kansas City.   To date, V13 received $1,000 back from "Fischer."

28.     Between September 15, 2015 and October 17, 2017, Asomani received a total of $2,993,354 deposited into the banks accounts listed above because of the scheme.

29.     Of the $2,993,354 received due to the scheme, between November 1, 2015, and March 7, 2016, Asomani received a total of $2,498,617 deposited into the bank accounts listed in paragraph nine.

10

30.     Between November 1, 2015 and March 7, 2016, Asomani wired $1,789,416.71 from his bank accounts listed in paragraph nine to bank accounts in Ghana.

31.     Between November 1, 2015 and March 7, 2016, Asomani spent approximately $342,278 on auto purchases and auto or shipping related expenses. Over the same time, Asomani shipped 18 vehicles to Accra, Ghana, with declared values of approximately $284,190.

32.     Between November 1, 2015 and March 7, 2016, Asomani spent approximately $331,339 of the funds received from the fraud scheme, including but not limited to:

    a.    $88,402 in cash or cashier's checks;

    b.    $36,873 to other Asomani-controlled accounts;

    c.    $23,589 in Paypal expenditures;

    d.    $23,293 in retail expenses;

    e.    $20,218 to T.M.C.C. car loan payments (Toyota Motor Credit Corporation);

    f.    $17,654 to Marie Ackah (Henry Asomani's fiancé);

    g.    $6,429 in utilities;

    h.    $5,860 in bank fees;

    i.    $5,341 in entertainment, food, and travel expenses;

    j.    $4,639 in taxes or government fees; and,

    k.    $4,597 in education expenses.

11

## FINANCIAL ANALYSIS OF 2019 LEXUS

33. Based on the following financial analysis, a 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, was purchased with funds Asomani received from the proceeds of the online romance fraud scheme.

34. On or around September 15, 2018, Asomani purchased the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, from Pohanka Lexus in Chantilly, Virginia for approximately $48,957. The funds used to purchase the Lexus were generated from the following transactions; amounts are approximate:

| | |
|---|---|
| Trade-in of 2016 Lexus RX350 | $21,250 |
| Amount down by Henry Asomani | $3,000 |
| Amount financed via loan | $24,707 |
| Total | $48,957 |

35. Approximately $21,250 was generated from the trade-in of a 2016 white Lexus RX350. On or around April 20, 2016, Asomani purchased the defendant 2016 white Lexus RX350, VIN: 2T2BZMCA2GC029120, from Pohanka Lexus in Chantilly, Virginia for approximately $71,664. The funds used to purchase the 2016 Lexus were generated from a $50,000 down payment from Asomani and the remaining balance, approximately $21,664, was financed by Lexus Financial Services (LFS). Below is a summary of the transfer of funds which effectuated the $50,000 down payment for the 2016 Lexus:

      a. Two $15,000 cashier's checks, numbered 389202 and 374860, dated January 4, 2016 and February 14, 2016, respectively, were drawn on Crystal Custom LLC, PNC Bank account x3444. These cashier's

checks were purchased from funds Asomani received from V1 as set forth below.

    i. V1 deposited the following funds into Mega Auto Custom LLC, Bank of America accounts:

| Date | From | To | Amount |
|------|------|-----|--------|
| 12/15/2015 | V1, Bank of Lees Summit XX3755 | Mega Auto Custom LLC, Bank of America XX6359 | $90,000 |
| 12/15/2015 | V1, Bank of Lees Summit XX3755 | Mega Auto Custom LLC, Bank of America XX5105 | $90,000 |
| **Subtotal** | | | **$180,000** |

    ii. Following receipt of funds from V1, Asomani transferred funds from Mega Auto Custom LLC, Bank of America accounts to Crystal Custom LLC, PNC Bank account XX3344:

| Date | From | To | Amount |
|------|------|-----|--------|
| 12/15/2015 | Mega Auto Custom LLC, Bank of America XX5105 | Crystal Custom LLC, PNC XX3444 | $9,500 |
| 12/16/2015 | Mega Auto Custom LLC, Bank of America XX5105 | Crystal Custom LLC, PNC XX3444 | $4,000 |
| 12/16/2015 | Mega Auto Custom LLC, Bank of America XX6359 | Crystal Custom LLC, PNC XX3444 | $9,000 |
| 12/17/2015 | Mega Auto Custom LLC, Bank of America XX5105 | Crystal Custom LLC, PNC XX3444 | $13,500 |
| 12/18/2015 | Mega Auto Custom LLC, Bank of America XX6359 | Crystal Custom LLC, PNC XX3444 | $6,000 |
| 12/22/2015 | Mega Auto Custom LLC, Bank of America XX6359 | Crystal Custom LLC, PNC XX3444 | $13,000 |
| **Subtotal** | Mega Auto Custom LLC, Bank of America XX5105 | Crystal Custom LLC, PNC XX3444 | **$55,000** |

    iii. Following the transfer of funds into Crystal Custom LLC, PNC Bank XX3444, Asomani purchased two cashier's checks made payable to Pohanka Lexus:

13

| Date | From | To | Amount |
|---|---|---|---|
| 01/04/2016 | Crystal Custom LLC, PNC XX3444, Cashier's Check 389202 | Pohanka Lexus, Chantilly, VA | $15,000 |
| 02/14/2016 | Crystal Custom LLC, PNC XX3444, Cashier's Check 374860 | Pohanka Lexus, Chantilly, VA | $15,000 |
| **Subtotal** | | | **$30,000** |

b. One $20,000 cashier's check, number 400210110, dated January 26, 2016, was drawn on Crystal Custom LLC, M&T Bank account X8245. The cashier's check was purchased with funds Asomani received from V1 as set forth below.

i. V1 deposited the following amounts into Mega Auto Custom LLC, Bank of America XX6359:

| Date | From | To | Amount |
|---|---|---|---|
| 01/22/2016 | V1, Bank of Lees Summit XX3755 | Mega Auto Custom LLC, Bank of America XX6359 | $151,000 |
| 01/22/2016 | V1, Bank of Lees Summit XX3755 | Mega Auto Custom LLC, Bank of America XX6359 | $151,000 |
| **Subtotal** | | | **$302,000** |

ii. Following the receipt of funds from V1, Asomani transferred funds from Mega Auto Custom LLC, Bank of America to Crystal Custom LLC, M&T Bank:

| Date | From | To | Amount |
|---|---|---|---|
| 01/22/2016 | Mega Auto Custom LLC, Bank of America XX6359 | Crystal Custom LLC, M&T Bank XX8245 | $22,650 |
| **Subtotal** | | | **$22,650** |

14

iii.  Following the transfers of funds into Crystal Custom LLC, M&T Bank XX8245, Asomani purchased one Cashier's checks, made payable to Pohanka Lexus:

| Date | From | To | Amount |
|------|------|-----|--------|
| 01/26/2016 | Crystal Custom LLC, M&T Bank XX8245, Cashier's Check 400210110 | Pohanka Lexus, Chantilly, VA | $20,000 |
| **Subtotal** | | | **$20,000** |

36.     On October 23, 2018, Asomani was charged by indictment with violations of 18 U.S.C. §§ 1343 and 1349 (conspiracy to commit wire fraud), 18 U.S.C. §§ 1343 and 2 (wire fraud), 18 U.S.C. § 1956(h) (money laundering conspiracy), and 18 U.S.C. §§ 1957 and 2 (money laundering).

37.     On October 26, 2018, the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, was seized from Asomani pursuant to a federal seizure warrant.

## GROUNDS FOR FORFEITURE

38.     The Government is not required, at the pleading stage, to trace illicit funds.  *See United States v. Aguilar*, 782 F.3d 1101, 1109 (9th Cir. 2015) ("[T]he Government is not required to prove its case simply to get in the courthouse door."). Indeed, the Government is entitled to allege multiple theories of forfeiture and use the theory that best supports forfeiture. *See United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1159-60 (2d Cir. 1986) ("[F]ew cases will present facts that neatly match untainted deposits with withdrawals, and the real question therefore becomes which side bears the risk of the inevitable uncertainty that will arise in most cases. Congress has answered that question in the Government's favor by assigning it a lenient burden of proof in obtaining forfeiture of "traceable proceeds"

15

of drug transactions."). One theory of forfeiture based on actual tracing and the law of trusts, the Lowest Intermediate Balance Rule (LIBR), allows the Government to presume that where illicit funds are commingled with other funds, the other funds are withdrawn before the illicit funds, so that funds remaining in the account are forfeitable. *See United States v. Capoccia*, 2009 WL 2601426, *11 (D. Vt. Aug. 19, 2009). Where there are insufficient 'clean' funds to cover a withdrawal, illicit funds complete the withdrawal. *Id*. The balance of proceeds in the account is reduced accordingly and LIBR tracks the illicit proceeds balance in a commingled account. Another theory of forfeiture is pro rata sharing or the averaging rule such that any withdrawal from a commingled account is a pro rata sharing of innocent and illicit funds. *See Banco Cafetero Panama*, 797 F.2d at 1159 (2d Cir. 1986). Another generally accepted theory of forfeiture is 'drugs-in, first out' so that the first withdrawal out of an account is deemed to be illicit funds. *See Id*. Money laundering forfeiture broadly covers any property involved in the money laundering violation as set forth below.

**TRACING AND THE LOWEST INTERMEDIATE BALANCE THEORY**

39. The Government may forfeit funds and assets actually traceable to the wrongdoing. When tracing forfeitable funds through a bank account, the Government can use any generally accepted accounting method, including "first in, first out" or "first in, last out," but the Government will always be constrained by the lowest intermediate balance principle. *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1158-62 (2d Cir. 1986); *United States v. $88,029.08, More or Less, in U.S. Currency*, 2012 WL 4499084, *5 (S.D. W. Va. Sept. 28, 2012) (applying the lowest intermediate balance rule to grant summary judgment as to the forfeitability of drug proceeds in a commingled bank account). The lowest intermediate balance

16

rule means that the amount of forfeitable funds on the date of the seizure may not exceed the lowest intermediate balance in the account between the date of the deposit of the allegedly forfeitable funds and the date of the seizure where the Government is relying on an actual tracing analysis, as opposed to relying on 18 U.S.C. § 984 for seizure based on fungibility. Actual tracing supports forfeiture where the Government has traced illicit proceeds into an account, identified the lowest intermediate balance between the date of the deposit of illicit funds and the date of the seizure, and limits its seizure to no more than the lowest intermediate balance during that time.

## FORFEITURE BASED ON MONEY LAUNDERING

40. Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1) authorize, respectively, civil and criminal forfeiture for violations of Sections 1956, 1957 and 1960. All property, real and personal, used to commit the money laundering offense is subject to forfeiture as property involved in the offense. *United States v. Baker*, 227 F.3d 955, 967 (7th Cir. 2000). 'Involved in' includes any property used to commit or facilitate a money laundering offense. *United States v. Nicolo*, 597 F.Supp.2d 342, 347-48 (W.D. N.Y. 2009). Thus, forfeiture under a money laundering theory is broader than under a proceeds theory and can include commingled property. *United States v. McGauley*, 279 F.3d 62, 75-77 (1st Cir. 2002).

17

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

41.     The Plaintiff repeats and incorporates by reference the paragraphs above.

42.     By the foregoing and other acts, the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, was involved in a transaction or attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957, or is property traceable to property involved in a transaction or attempted transaction of a violation of 18 U.S.C. §§ 1956 and 1957, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

## SECOND CLAIM FOR RELIEF

43.     Plaintiff repeats and incorporates by reference the paragraphs above.

44.     By the foregoing and other acts, the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, constitutes, or was derived from proceeds traceable to violations of Title 18, United States Code, Section 1343, that is wire fraud, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

## THIRD CLAIM FOR RELIEF

45.     Plaintiff repeats and incorporates by reference the paragraphs above.

46.     By the foregoing and other acts, the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, constitutes, or was derived from proceeds traceable to violations of Title 18, United States Code, Section 1956, that is money laundering, to conceal the ownership and control of the proceeds, and therefore, is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

18

## FOURTH CLAIM FOR RELIEF

47.     Plaintiff repeats and incorporates by reference the paragraphs above.

48.     By the foregoing and other acts, the defendant 2019 silver Lexus NX300, VIN: JTJBARBZ5K2180053, constitutes, or was derived from proceeds traceable to violations of Title 18, United States Code, Section 1956(h), that is conspiracy to commit money laundering, and therefore, are forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE the United States prays that the defendant property be forfeited to the United States, that plaintiff be awarded its costs and disbursements in this action, and for such other and further relief as the Court deems proper and just.


Respectfully submitted,

Timothy A. Garrison
United States Attorney


By:     _/s/ Stacey Perkins Rock_
        Stacey Perkins Rock, #66141
        Assistant United States Attorney
        400 E. 9th Street, Fifth Floor
        Kansas City, Missouri 64106
        Telephone: (816) 426-7173
        E-mail: Stacey.Perkins-Rock@usdoj.gov

19

## **VERIFICATION**

I, Special Agent Lindsay Schloemer, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Federal Bureau of Investigation, that I have read the foregoing Verified Complaint <u>in</u> <u>Rem</u> and know the contents thereof, and that the factual matters contained in paragraphs eight through 35 of the Verified Complaint are true to my own knowledge, except that those matters herein stated to be alleged on information and belief and as to those matters I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent of the Federal Bureau of Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated  11/7/18            _/s/ Lindsay Schloemer_
                          Lindsay Schloemer
                          Special Agent
                          Federal Bureau of Investigation

20

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI

## CIVIL COVER SHEET

This automated JS-44 conforms generally to the manual JS-44 approved by the Judicial Conference of the United States in September 1974. The data is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. The information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law. This form is authorized for use only in the Western District of Missouri.

**The completed cover sheet must be saved as a pdf document and filed as an attachment to the Complaint or Notice of Removal.**

| **Plaintiff(s):** | **Defendant(s):** |
|---|---|
| First Listed Plaintiff: | First Listed Defendant: |
| United States of America ; | 2019 Lexus NX300, VIN ; |
| **County of Residence:** Jackson County | **County of Residence:** Outside This District |

**County Where Claim For Relief Arose:** Jackson County

| **Plaintiff's Attorney(s):** | **Defendant's Attorney(s):** |
|---|---|
| Assistant United States Attorney Stacey Perkins Rock ( United States of America) | |
| United States Attorney's Office | |
| 400 E. 9th Street, Fifth Floor | |
| Kansas City, Missouri 64106 | |
| **Phone:** 816-426-7173 | |
| **Fax:** | |
| **Email:** stacey.perkins-rock@usdoj.gov | |

**Basis of Jurisdiction:** 1. U.S. Government Plaintiff

**Citizenship of Principal Parties** (Diversity Cases Only)

    **Plaintiff:** N/A

    **Defendant:** N/A

**Origin:** 1. Original Proceeding

**Nature of Suit:** 690 All Other Forfeiture and Penalty Actions

**Cause of Action:** The defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), because it constitutes property involved in a transaction or an attempted transaction in violation of sections 1956, 1957 and 1960 of Title 18, United States Code, or is property traceable to such property.

**Requested in Complaint**

    **Class Action:**  Not filed as a Class Action

    **Monetary Demand (in Thousands):**

    **Jury Demand:**  Yes

    **Related Cases:**  Is NOT a refiling of a previously dismissed action

---

**Signature:** Stacey Perkins Rock

**Date:**  <u>11/7/2018</u>

If any of this information is incorrect, please close this window and go back to the Civil Cover Sheet Input form to make the correction and generate the updated JS44. Once corrected, print this form, sign and date it, and submit it with your new civil action.